UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EDELMIRA DE LA GARZA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) COMPLAINT |
| | ) |
| DEPUY ORTHOPAEDICS, INC., and | ) DEMAND FOR JURY TRIAL |
| JOHNSON & JOHNSON, INC. | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff brings this Complaint against Defendants DePuy Orthopaedics, Inc. and Johnson and Johnson, Inc., for damages and injuries sustained as a result of the wrongful conduct of Defendants as set forth herein. Plaintiff complains of Defendants and alleges on information and belief the following:

### PARTIES

1. Plaintiff Edelmira De La Garza is and at all times relevant to this Complaint was a citizen of the State of Texas.

2. Defendant DePuy Orthopaedics, Inc. ("DePuy") is and was at all times relevant to this Complaint an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581. Defendant DePuy Orthopaedics, Inc. is and was at all times relevant herein doing business in and/or having directed its activities in the State of Texas and this judicial district.

Complaint – Page 1

3. Defendant Johnson & Johnson, Inc. is and was at all times relevant to this Complaint a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Defendant Johnson & Johnson, Inc. is and was at all times relevant herein doing business in and/or having directed its activities in the State of Texas and this judicial district.

4. At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of its agency and was subject to and under the supervision of its co-defendant.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Plaintiff purchased the product that forms the basis of this lawsuit in Texas. At all times relevant hereto, Defendants designed, developed, manufactured, promoted, marketed, distributed, tested, warranted and sold in interstate commerce the ASR devices in Texas. Defendants marketed, distributed and sold the ASR devices in this district. These Defendants maintain such contacts within this district so as to subject them to personal jurisdiction.

7. At all times relevant, Defendants manufactured, created, designed, tested, labeled, packaged, supplied, marketed, sold, advertised, and/or otherwise distributed in interstate commerce a hip replacement system known as the DePuy ASR XL Acetabular System and a hip resurfacing system known as the DePuy ASR Hip Resurfacing Platform (collectively, "ASR devices").

## FACTUAL ALLEGATIONS

8. The ASR devices were developed by DePuy Orthopaedics, Inc. and/or Johnson & Johnson, Inc. in order to reconstruct human hip joints due to conditions such as osteoarthritis, rheumatoid arthritis, avascular necrosis (AVN), or fracture. The hip joint connects the femur bone of a patient's leg to the patient's pelvis. The hip joint is a ball that fits in the socket. The socket portion of the hip is called the acetabulum. The femoral head at the top of the femur bone rotates within the curved surface of the acetabulum.

9. The ASR XL Acetabular System is made up of three components: the metal femoral stem is inserted inside the femur, the metal femoral head (or ball) connects to the stem and then fits inside the metal acetabular cup (socket). The ASR Hip Resurfacing Platform has two components: a metal cap is placed over the natural femoral head and the metal acetabular cup is placed in the acetabulum. Once implanted, these devices are supposed to last for an average of about 15 or more years before requiring replacement.

10. The ASR devices were not subject to the rigorous premarket approval (PMA) testing and approval pursuant to 21 U.S.C. § 360(e). Instead, DePuy Orthopaedics, Inc. and/or Johnson & Johnson, Inc. obtained approval from the FDA to market the ASR XL Acetabulum System in the United States through the 510(k) premarket notification process pursuant to 21 U.S.C. § 360(k) asserting that it was substantially equivalent to other hip replacement systems already available on the market. The ASR Hip Resurfacing Platform was not approved for use in the United States by the Food and Drug Administration (FDA).

11. Defendants marketed the ASR devices as having many advantages over other hip replacement or hip resurfacing systems. Defendants described the ASR devices as a "high performance hip replacement" and advertised them with pictures of a woman running on a sandy beach, and a man taking an aggressive golf swing. Defendants advertised the ASR devices as superior devices because the bone in the hip socket was preserved, the hip replacement was subject to reduced wear, the hip replacement matched the hip's natural anatomy, the surgery only required a small incision, and the device was based on a strong clinical history.

12. Defendants further advertised the ASR devices as superior to other devices representing that they had a strong clinical history, were less prone to dislocation and wear and more closely simulated the body's anatomy.

13. Contrary to Defendants' marketing campaigns and representations, many patients experienced premature failure due to component loosening, component malalignment, dislocation and fracture, due to the unsafe design of the ASR devices. In addition, reports were received that the implant's "ball" and "socket" that make up the hip-joint, which were both metal, generate metal debris from wear which can spread throughout the surrounding bone and tissue and cause severe inflammation and damage. These problems have necessitated premature removal of the device in many patients.

14. At the time the ASR devices were designed, tested, manufactured, marketed and introduced into the stream of commerce, safer, more effective alternative designs of hip revision and replacement systems existed and were available to patients.

15. In 2008, the Australian Orthopaedic Association – National Joint Replacement Registry released their 2008 annual report, which was updated in September, 2008. This report

analyzed the hip replacement information in the registry for the years 2003 to 2007. The report specifically stated that the ASR devices had a higher than anticipated rate of revision as compared to all other devices. More specifically, the ASR devices were found to have a risk of revision more than twice that of other hip replacement systems.

16. Defendants failed to halt sales of the ASR devices and failed to warn the public of these findings. Instead, throughout 2008 and 2009, they continued to market the ASR devices as safe and effective. Information from Johnson & Johnson, Inc. indicates that approximately 93,000 of the ASR devices were used worldwide. In the last quarter of 2009, Defendants indicated that they had decided to stop sales of the devices supposedly due to decreased demand.

17. In March, 2010, Defendants sent a warning letter to healthcare providers regarding the ASR devices. In this letter, Defendants warned doctors that recent data from the United Kingdom indicated higher than expected failure rates at three years of the ASR devices when used in hip replacements for patients with smaller femoral heads.

18. On August 24, 2010, Defendants issued a voluntary recall of the ASR devices after stating that new data was released confirming the already known dangers of the devices and corroborating the many complaints received by the FDA from physicians and patients.

19. Unpublished data from the National Joint Registry (NJR) of England and Wales showed the five year revision rate for the ASR Hip Resurfacing System was approximately 12 percent. The NJR data showed that the ASR XL Acetabular System five year revision rate was approximately 13 percent, or more than 1 in 8 patients.

20. Medical information indicates that a principal reason for the high failure rate of the ASR devices is the design of the acetabular metal cup which is shallower than other safer, more effective acetabular cups on the market. The cups also included a beveled edge which further reduced the surface area of the acetabular cup in contact with the femoral head. These defective, dangerous design components have led to edge loading in many patients, often generating dangerous cobalt and chromium metal debris. This defective design is a producing cause of problems such as loosening of the device, malalignment of the device, and fracture of the device from the bone, all of which can cause severe infection and inflammation. Additional complications may include increased metal ion levels in the blood, bone staining, necrosis, swelling, nerve damage, tissue damage and/or muscle damage.

21. Defendants failed to disclose material facts regarding the design defects and failures of the ASR devices. Defendants knew that Plaintiff Edelmira De La Garza and those similarly situated would not know about these design defects and failures.

22. Plaintiff is a 57 year old female.

23. On or about October 28, 2009, Plaintiff underwent hip replacement surgery. An ASR XL Acetabular System with a DePuy S-ROM femoral stem was implanted in her right hip.

24. Since the surgical implantation of the ASR XL Acetabular System in her right hip, Plaintiff has suffered symptoms including but not limited to swelling, hip pain, and problems sitting and standing. Due to these complications, Plaintiff now faces the potential for a revision surgery in the future. Plaintiff will probably need additional medical care for her hip even after the revision surgery.

25. Had Plaintiff known that the failure of the ASR XL Acetabular System would cause swelling, hip pain, problems sitting and standing, and the potential for a revision surgery in the future, Plaintiff would not have elected to have had the ASR XL Acetabular System implanted in her hip.

26. As a result of the implantation of the ASR XL Acetabular System, Plaintiff has suffered permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement. Plaintiff faces the potential for a revision surgery to explant the failed ASR XL Acetabular System in the future, which presents an enormous risk to her because it is technically more difficult than the original implant surgery, there is an increased risk of complications and death, and the recovery is more prolonged than the original hip replacement surgery. She will continue to suffer damages in the future.

## FIRST CAUSE OF ACTION
Negligence

27. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

28. Defendants had a duty to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of the ASR devices, including a duty to ensure that the ASR devices did not pose a significantly increased risk of adverse events.

29. Defendants failed to perform adequate testing and evaluations of the ASR devices prior to providing them to patients.

30. Defendants have received repeated reports by healthcare providers of complications and failures with the ASR devices in the United States and other countries, including dislocation, malalignment, metal debris in the patient's body and loosening of component parts. Defendants had a duty to perform further testing and investigate the cause of these complaints, and warn physicians and patients of these possible complications.

31. Defendants failed to exercise reasonable care in the design, manufacture, testing, marketing and distribution into the stream of commerce of the ASR devices. Defendants knew or should have known that the ASR devices could fail prematurely in patients therefore giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, past and future disfigurement, and therefore were not safe for use by Plaintiff.

32. Despite the fact that Defendants knew or should have known that the ASR devices could fail prematurely in patients, therefore giving rise to pain and suffering, disability and the need for a possible revision surgery to replace the device, Defendants continued to market the ASR devices as safe and effective hip replacement systems.

33. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

34. In taking the actions and omissions that caused these damages, Defendants exhibited malicious conduct and/or conscious disregard for the rights and safety of others. Plaintiff seeks recovery for punitive damages.

## SECOND CAUSE OF ACTION
Strict Product Liability – Design Defect

35. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

36. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

37. At the time of the design, manufacture and sale of the ASR devices, a safer alternative design was available that would have prevented or significantly reduced the risk involved with the ASR devices without substantially impairing its utility and was economically and technologically feasible at the time they left the control of Defendants by the application of existing or reasonably achievable scientific knowledge.

38. The ASR device that was surgically implanted in Plaintiff was defective in its design when it left the hands of Defendants in that the design was unreasonably dangerous, as stated above, thereby posing a serious risk that the device could fail prematurely in patients, giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

39. Defendants' introduction of the defective and unreasonably dangerous ASR devices into the stream of commerce was a producing cause of the damages and injuries suffered by Plaintiff, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

40. Plaintiff invokes the Doctrine of Strict Liability, Section 402A, RESTATEMENT (SECOND) OF TORTS, as adopted in Texas.

41. In taking the actions and omissions that caused these damages, Defendants exhibited malicious conduct and/or conscious disregard for the rights and safety of others. Plaintiff seeks recovery for punitive damages.

### THIRD CAUSE OF ACTION
Strict Product Liability – Failure to Warn

42. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

43. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

44. The ASR devices placed into the stream of commerce by Defendants were defective due to the failure to warn of the harms known or which should be known to Defendants. Defendants knew or should have known that the ASR devices could fail prematurely in patients therefore giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement, but failed to give consumers adequate warnings of such risks.

45. The ASR devices placed into the stream of commerce by Defendants were surgically implanted in a manner reasonably anticipated by Defendants.

46. Defendants had notice of complications and failures of the ASR devices as reported by healthcare providers, not only in the United States but also other countries in which the ASR devices were for sale. These reports began several years prior to the recall as indicated above. Defendants did not take actions to notify the healthcare providers in the United States of any complications and/or failures until March, 2010.

47. Defendants' introduction of the defective and unreasonably dangerous ASR devices into the stream of commerce was a producing cause of the damages and injuries suffered by Plaintiff, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

48. Plaintiff invokes the Doctrine of Strict Liability, Section 402A, RESTATEMENT (SECOND) OF TORTS, as adopted in Texas.

49. In taking the actions and omissions that caused these damages, Defendants exhibited malicious conduct and/or conscious disregard for the rights and safety of others. Plaintiff seeks recovery for punitive damages.

## FOURTH CAUSE OF ACTION
### Strict Products Liability- Manufacturing Defect

50. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

51. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

52. The ASR device that was surgically implanted in Plaintiff was defective and unreasonably dangerous in its manufacture when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk that it could fail prematurely in patients therefore giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

53. Defendants' introduction of the defective and unreasonably dangerous ASR devices into the stream of commerce was a producing cause of the damages and injuries suffered by

Plaintiff, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

54. Plaintiff invokes the Doctrine of Strict Liability, Section 402A, RESTATEMENT (SECOND) OF TORTS, as adopted in Texas.

55. In taking the actions and omissions that caused these damages, Defendants exhibited malicious conduct and/or conscious disregard for the rights and safety of others. Plaintiff seeks recovery for punitive damages.

## FIFTH CAUSE OF ACTION
### Breach of Express Warranty

56. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

57. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

58. Defendants expressly warranted that the ASR devices were safe and effective hip replacement systems, as stated above.

59. The ASR devices placed into the stream of commerce by Defendants did not conform to these express representations because they failed prematurely thereby giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

60. Defendants' breach of express warranties regarding the safety and effectiveness of the ASR devices was a producing cause of Plaintiff's permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical

pain and mental anguish, past and future physical impairment, and past and future disfigurement.

61. Defendants knowingly and/or intentionally committed these actions and omissions that caused these damages. Plaintiff seeks recovery for punitive damages.

### SIXTH CAUSE OF ACTION
Breach of Implied Warranty of Merchantability

62. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

63. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

64. At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices, Defendants knew the use for which the ASR devices were intended, and impliedly warranted the ASR devices to be of merchantable quality and safe for their intended use.

65. Plaintiff and her healthcare providers reasonably relied upon the skill and judgment of Defendants as to whether the ASR devices were of merchantable quality and safe for their intended use.

66. Contrary to Defendants' implied warranties, the ASR devices were not of merchantable quality or safe for their intended use, because the ASR devices were unreasonably dangerous as described above.

67. Defendants' breach of implied warranties regarding the safety and effectiveness of the ASR devices was a producing cause of Plaintiff's permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical

pain and mental anguish, past and future physical impairment, and past and future disfigurement.

68. Defendants knowingly and/or intentionally committed these actions and omissions that caused these damages. Plaintiff seeks recovery for punitive damages.

**SEVENTH CAUSE OF ACTION**
Breach of Implied Warranty of Fitness for a Particular Purpose

69. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

70. Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices.

71. At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the ASR devices, Defendants knew the particular purpose for which the ASR devices were intended, and impliedly warranted the ASR devices to be fit for their particular purpose.

72. Plaintiff and her healthcare providers reasonably relied upon the skill and judgment of Defendants as to whether the ASR devices were fit for their particular purpose.

73. Contrary to Defendants' implied warranties, the ASR devices were not fit for their particular purpose, because the ASR devices were unreasonably dangerous as described above.

74. Defendants' breach of implied warranties regarding the ASR devices fitness for their particular purpose was a producing cause of Plaintiff's permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

75. Defendants knowingly and/or intentionally committed these actions and omissions that caused these damages. Plaintiff seeks recovery for punitive damages.

### EIGHTH CAUSE OF ACTION
Fraud

76. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

77. For several years, Defendants have had actual knowledge that the ASR devices could fail prematurely thereby giving rise to unnecessary pain and suffering, disability, and the need for a possible revision surgery to replace the device.

78. The fact that the ASR devices could fail prematurely thereby giving rise to unnecessary pain and suffering, disability, and the need for a possible revision surgery to replace the device was, and is, a material fact.

79. Defendants intentionally and/or recklessly made false representations of material fact to Plaintiff, including but not limited to claims that the ASR devices were safe and effective hip replacement systems. For example, Defendants claimed that the devices were based on a strong clinical history, and that the devices would allow patients to return to a more active lifestyle.

80. Defendants had a duty to disclose these facts to Plaintiff and her healthcare providers.

81. In reliance on Defendants' misrepresentations of material fact, Plaintiff obtained the ASR device. Had Plaintiff known that the ASR device could fail prematurely thereby giving rise to Plaintiff's injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement, she would not have elected to obtain the ASR device.

82. As a result of Defendants' intentional and/or reckless misrepresentations, including but not limited to claims that the ASR devices were safe for use, Plaintiff has suffered permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

83. In taking the actions and omissions that caused these damages, Defendants exhibited malicious conduct and/or conscious disregard for the rights and safety of others. Plaintiff seeks recovery for punitive damages.

## NINTH CAUSE OF ACTION
### Negligent Misrepresentation

84. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

85. For several years, Defendants have had actual knowledge that the ASR devices could fail prematurely thereby giving rise to injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

86. The fact that the ASR devices could fail prematurely thereby giving rise to unnecessary pain and suffering, disability, and the need for a possible revision surgery to replace the device was, and is, a material fact.

87. Defendants recklessly and/or negligently made false representations of material fact to Plaintiff, including but not limited to claims that the ASR devices were safe and effective hip replacement systems. For example, Defendants claimed that the devices were based on a strong clinical history, and that the devices would allow patients to return to a more active lifestyle.

88. Defendants failed to disclose material facts regarding the design defects and failures of the ASR devices. Defendants knew that Plaintiff and those similarly situated would not know about these design defects and failures.

89. These representations were made with the intent to induce Plaintiff to obtain an ASR device.

90. In reliance on Defendants' misrepresentations of material fact, Plaintiff obtained an ASR device. Had she known that the ASR devices could fail prematurely thereby giving rise to Plaintiff's injuries and damages, including but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement, she would not have elected to obtain the ASR device.

91. As a result of Defendants' reckless and/or negligent misrepresentations, including but not limited to claims that the ASR devices were safe for use, Plaintiff has suffered permanent injuries and damages, including, but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement.

**TENTH CAUSE OF ACTION**
Violation of the Texas Deceptive Trade Practices Act

92. Plaintiff incorporates by reference and realleges each and every allegation set forth in the preceding paragraphs of this Complaint as though set out in full.

93. Plaintiff is a consumer as defined in the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Comm. Code § 17.41, et seq.

94. The wrongful conduct of Defendants, as described herein, constitutes one or more violations of the Texas DTPA, including but not limited to the following:

a. False, misleading, unfair and/or deceptive acts or practices including, but not limited to, representing that the ASR devices had characteristics and/or benefits that it did not have; representing the ASR devices were of a particular standard or quality that it was not; and/or failing to disclose known information about the ASR devices in order to induce consumers, such as Plaintiff, into a transaction that the consumers would not have entered into had the information been disclosed;

b. Breach of an express and/or implied warranty; and

c. Unconscionable acts or practices involving the design, manufacture, testing, marketing, promotion, distribution, and sale of the ASR devices, defective and unreasonably dangerous products which put unknowing consumers at risk of serious bodily injury.

95. Plaintiff and Plaintiff's healthcare providers relied on Defendants' false, misleading and/or deceptive acts and practices to Plaintiff's detriment.

96. Defendants' acts and/or omissions in violation of the Texas DTPA were a producing cause of Plaintiff's injuries, including but not limited to economic damages and mental anguish.

97. Defendants' wrongful conduct was committed knowingly and/or intentionally making Defendants liable for treble damages under the Texas DTPA.  Plaintiff, therefore, is entitled to and will seek threefold the mental anguish and economic damages sustained, plus reasonable and necessary attorneys' fees, and costs of court, in accordance with section 17.50 of the Texas Business and Commerce Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on each of the causes of action alleged for the following relief:

A. Judgment in favor of Plaintiff and against all Defendants, jointly and severally, for damages in such amounts as may be proven at trial;

B. Compensation for both economic and non-economic losses, including but not limited to past and future medical expenses, past and future physical pain and mental anguish, past and future physical impairment, and past and future disfigurement, in such amounts as may be proven at trial;

C. Punitive and/or exemplary damages in such amounts as may be proven at trial;

D. Attorneys' fees and costs;

E. Pre- and post-judgment interest; and

F. Such other and further relief to which they may be entitled, whether in law or equity.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. of Civ. Proc. 38, Plaintiff demand trial by jury on all issues.

Respectfully submitted,

_____
JOHN DAVID HART
Texas State Bar #09147700

LAW OFFICES OF JOHN DAVID HART
Wells Fargo Tower
201 Main Street, Suite 1720
Fort Worth, TX 76102
817/870-2102 - Telephone
817/332-5858 – Facsimile
johnhart@hartlaw.com

**ATTORNEY FOR PLAINTIFF**